IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, § § § § Plaintiff, § § v. § § § SANDIA DRILLING CO., LTD, L.L.P and § SANDIA DRILLING OF TEXAS, L.L.C. § § § Defendants. § | CIVIL ACTION NO. COMPLAINT JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and national origin and to provide appropriate relief to Montrel Pipkins, Meldun Williamson, and Brian Rocha who were employed by Sandia Drilling Co., Ltd., L.L.P. and/or Sandia Drilling of Texas, L.L.C. ("Defendants") and racially harassed by their supervisors. The harassment led to the constructive discharge of Pipkins and Williamson and the retaliatory termination of Rocha after he complained of the discrimination to Sandia management. These allegations are discussed in greater particularity in paragraphs 8 through 20 below.

## JURISDICTION AND VENUE

1. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper within the jurisdiction of the United States District Court for the Eastern District of Texas, Marshall Division under 28 U.S.C. § 1391 and Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

3. The employment actions alleged to be unlawful occurred in northeastern Texas which is within the jurisdiction of this Court.

## PARTIES

4. Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendants have been doing business in the state of Texas and Marshall county and have continuously had more than fifteen (15) employees. Defendants may be served by serving its registered agent for service of process, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

6. At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. Sections 2000e(b), (g) and (h).

**STATEMENT OF THE CLAIMS**

7. More than thirty (30) days prior to the institution of this lawsuit Pipkins, Williamson and Rocha each filed charges with the Commission alleging violations of Title VII by Sandia Drilling Company. All conditions precedent to the institution of this lawsuit have been fulfilled, including the timely filing of charges and an attempt to conciliate the matter.

8. Since at least 2009, Defendants have engaged in unlawful employment practices on mobile oil rigs in various locations in northeast Texas and northwest Louisiana, in violation of Sections 703(a)(1) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). The practices include subjecting Pipkins and Williamson to unlawful race-based harassment and constructive discharge, and subjecting Rocha to race and national origin-based harassment and a retaliatory termination for having complained about the discriminatory harassment.

<u>Montrel Pipkins and Meldun Williamson</u>

9. Pipkins began working for Defendants in November 2006, initially as a Floor Hand and ultimately as a Derrick Hand. Williamson began working for Defendants in the mid-2000s, initially as a Floor Hand and later as a Motor Man. Both Pipkins and Williamson worked on the same oil rig. They were the only two African-American workers on the rig at the time of the alleged discrimination.

10. Soon after Pipkins and Williamson began their employment with Defendants, their top level supervisors on the rig, Tool Pushers Joe Johnson and Leon Alburty began calling them, among other things, by the following racial slurs almost on a daily basis: "Nigger," "Black ass," "Black mule nuts," "Sunshine," "Black topping", and "tree monkey." Johnson also tried to place Pipkins's hand on Johnson's penis, saying "grab this, boy."

11. Sometime in early April 2008, Pipkins and Williamson found hangman's nooses on their trucks at the end of their shift. Pipkins reported the incident to Tool Pusher Alburty, but Alburty simply told Pipkins to throw the noose away. Defendants took no further action to investigate the incident.

12. Williamson reported Johnson and Arburty's harassment of him to Defendants' off-site administration personnel; however the company took no corrective action. Williamson was told simply to take a couple of weeks off to rest. The Tool Pushers continued to harass Pipkins and Williamson after their complaints.

13. Pipkins felt compelled to resign on April 28, 2008, after Johnson ordered him to carry out unreasonably dangerous work. Johnson told him either to climb about 10 feet without any safety mechanism and complete a job or go home. Pipkins chose to go home and not risk his life.

14. Similarly, Williamson felt compelled to resign sometime around May 2008, following a safety meeting where Alburty said in front of co-workers that "niggers can pick more cotton than Whites."

Brian Rocha

15. Rocha began working for Defendants as a Floor Hand in January 2008. Continuously throughout his employment, Rocha worked under the supervision of Driller Justin Smith and a Tool Pusher named "Mickey."

16. Justin Smith, also known as "Big Red," harassed Rocha and referred to him in slurs almost on a daily basis specifically for dating a Black woman. Smith called Rocha "Nigger" and "Nigger-lover." Smith would also yell out to Rocha that Rocha was "working like a Wetback." Unlike the other men in his crew, Smith treated Rocha in a degrading manner and

4

with hostility; admonished Rocha that he should not be dating outside of his race, and would often threaten "to whip [Rocha's] ass with a 24."

17. Sometime in the Spring of 2008, Williamson worked on Rocha's rig. Rocha heard Justin Smith say, "ain't no damn Nigger staying in the same crew trailer I'm staying in." Rocha further heard Smith say, "I ain't working with no mother fucking Nigger on my damn crew. Fuck that. I'll quit before I work with a Nigger on my crew." Seeing the hatred in Smith's voice as he made the comments, Rocha had had enough of the racism and complained to Tool Pusher Mickey.

18. Previously, Rocha had reported Smith's discriminatory harassment of him to Tool Pusher "Mickey" and the Derrick Man (name unknown), telling them the discrimination was physically threatening to him and affected his job performance. Defendants did nothing to remedy the situation. Tool Pusher Mickey dismissed Smith's conduct, telling Rocha that it was not Smith's fault; that it was the only way Smith knew how to manage his crew.

19. Following this complaint to Tool Pusher Mickey, Rocha travelled to Defendants' off-site office and complained of the harassment to the Superintendent Adrian Pyle, and asked for a transfer to another rig.

20. Rocha informed Pyle that he would have to miss work for a few days due to a serious sinus infection and then due to his grandfather's sudden death and funeral. When he was to return to work, Pyle told Rocha that he had been terminated because the company hired a replacement. The termination occurred a couple of weeks after Rocha complained to Pyle about discrimination.

21. Under Section 703(a)(1) of Title VII, "[i]t shall be an unlawful employment practice for an employer to … discriminate against any individual with respect to his … terms,

5

conditions or privileges of employment, because of such individual's race, color, [or] national origin." 42 U.S.C. § 2000e-2(a)(1).

22. Under Section 704(a) of Title VII "[i]t shall be an unlawful employment practice for an employer to … discriminate against any of [its] employees … because [the employees have] opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

23. The unlawful practices by Defendants complained of herein have deprived Pipkins, Williamson, and Rocha of equal employment opportunities and have otherwise adversely affected their status as employees because of their race, color, and/or national origin.

24. The unlawful employment practices complained of herein were intentional.

25. Defendants committed the unlawful employment practices complained of herein with malice or with reckless indifference to the federally protected rights of Pipkins, Williamson and Rocha.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with it, from race-based harassment and any other employment practice which discriminates on the basis of race, color or national origin;

B. Order Defendants to institute and carry out policies and practices which provide equal employment opportunities for African-Americans and Hispanics, and which eradicate the effects of its past and present unlawful employment practices, including, but not limited to: bi-annual training to all management personnel, including rig Tool Pushers and

Drillers, and to all other rig workers on federal anti-discrimination laws, in particular on what constitutes violations under Title VII; and the development of effective policies to prevent discrimination;

C. Order Defendants to make Pipkins, Williamson, and Rocha whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, front pay or reinstatement;

D. Order Defendants to make Pipkins, Williamson, and Rocha whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 8 through 20 above, including but not limited to, job search expenses and the value of any lost benefits, in an amount to be determined at trial.

E. Order Defendants to make Pipkins, Williamson, and Rocha whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial;

F. Order Defendants to pay punitive damages to Pipkins, Williamson, and Rocha for its malicious and reckless conduct described above, in amounts to be determined at trial;

G. Award the Commission its costs of this action; and

H. Grant any and all other relief, legal or equitable, which the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, the Commission hereby requests a jury on all issues raised in the instant Complaint which may be tried by jury.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
131 M Street, N.E.
Washington, D.C. 20507

 /s/  Claudia Molina-Antanaitis
Claudia Molina-Antanaitis
Attorney-in-Charge
Bar No. (none – Maryland)
Equal Employment Opportunity Commission
1201 Louisiana Street, 6th Floor
Houston, Texas 77002
(713) 651-4952
(713) 651-7995 [facsimile]
claudia.molina@eeoc.gov

OF COUNSEL:

Jim Sacher
Regional Attorney

Rose Adewale-Mendes
Supervisory Trial Attorney
Equal Employment Opportunity Commission
1201 Louisiana Street, 6th Floor
Houston, Texas 77002